**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| **NORMA HALL** <br>     **Appellant** <br><br> **VERSUS** <br><br> **MICHAEL J. ASTRUE** <br> **COMMISSIONER OF SOCIAL SECURITY** <br>     **Appellee** | **CIVIL ACTION** <br> **NO. 07-1164** <br><br> **JUDGE JAMES T. TRIMBLE, JR.** <br><br> **MAGISTRATE JUDGE JAMES D. KIRK** |

<u>REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE</u>

Norma Hall ("Hall") filed an application for Supplemental Security Income ("SSI") on September 29, 2000, alleging a disability onset date of February 24, 1999 due to an inability to work because of pain in her hands, knees and back as well as cramps in her legs (R. 81-87, 103-112). The application was denied and Hall filed a request for hearing on May 24, 2001. After the hearing was held, Administrative Law Judge Daniel Curran issued a decision dated February 22, 2002 finding Hall not disabled. Hall timely filed a request for review with the Appeals Council who vacated the decision and remanded the case for further proceedings (R. 64-65).

On December 7, 2005, a hearing was held before Administrative Law Judge Gerald L. Meyer in Beaumont Texas. The claimant, who was represented by Anthony Mitchell, appeared and testified. ALJ Meyer issued a decision on January 11, 2006 determining Hall was disabled as of December 23, 2003 and was eligible for benefits as of that

date (R. 17-23). Hall filed a request for review of that decision on March 9, 2006 (R. 10). The Appeals Council declined review of the ALJ's decision on May 18, 2006. Accordingly, the ALJ's decision became the final decision of the Commissioner of Social Security ("the Commissioner") (R. 5-7).

To qualify for SSI, a claimant must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. 1381(a). Eligibility is dependent upon disability, income and other financial resources. 42 U.S.C. 1382(a). To establish disability, a claimant must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve (12) months. Claimant must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy. 42 U.S.C. 1382(a)(3).

SUMMARY OF PERTINENT FACTS

At the time of the December 7, 2005 hearing before ALJ Meyer, Hall was 56 years old. Hall possessed a limited education and had no relevant work history . She lived alone, cared for herself and performed her own household chores.

Hall testified that she was forced to quit her housekeeping job at the Holiday Inn due to pain in her back. In addition to her back pain, she complained of pain and swelling in her left knee.

2

Hall sought medical attention for these and other ailments at the emergency room of Moss Regional Hospital.[1] Records from Moss Regional Hospital reveal Hall visited the emergency room on numerous occasions. In many instances, Hall was released with instructions to take her medications as directed and return to the clinic for a followup. However, there are several entries within the records indicating Hall failed to keep those followup appointments.

According to the medical records, Hall's first complaint of back pain was made in August of 1998 subsequent to a fall she suffered. She was referred to radiology for an x-ray which revealed no evidence of a fracture, localized bony lesion or malalignment (R 156). Hall returned in September of 1998 and another x-ray was taken of her lumbar spine. That study indicated no evidence of an acute fracture or dislocation; however, lumbarization of S1 was present as well as mild end plate lipping an narrowing of the S1-S2 disk space (R. 151). In April 1999, Hall returned with complaints of back pain and doctors ordered another x-ray. William Wassell, M.D. noted degenerative changes at L5-S1 with marginal spurring and sclerosis in the end plates. Dr. Wassell found no other abnormalities and ultimately concluded there were no significant changes from the September, 1998 (R. 139). In

---

[1] Hall was also seen on occasion for other complaints including, but not limited to chest pain, abdominal pain, esophageal complaints and migraine headaches.

October of 2000, an x-ray of the cervical spine showed minimal narrowing at C5-C6 and mild anterior and posterior degenerative spurring at C5, C6 and C7 (R. 186).

Medical evidence regarding Hall's knees and ankles shows diagnoses of sprain. However, in August of 2000, after reviewing an x-ray of her knees, Clifton Morris, M.D. confirmed an onset of osteoarthritis (R. 195).

In addition to the aforementioned medical evidence, the record also includes several disability examinations on behalf of Disability Determination Services. Among these is an examination by Harold A. Heitkamp, M.D. from July 1999 (R. 162-164). Dr. Heitkamp's examination revealed Hall walked without a limp, was able to get up on her toes and heels, had a full range of motion in her knees and ankles and the range of motion in her back was a forward flexion of 90 degrees, lateral flexion of 30 degrees bilaterally and extension of 20 degrees. Dr. Heitkamp opined that Hall, due to her "obesity and mild arthritis of her back", was limited in her ability to lift, stand or walk for any length of time (R. 162-164).

On or about February 1, 2001, Anand K. Roy, M.D. performed a disability examination and found Hall suffered from a chronic backache. Though her flexion was reduced to 60 degrees and extension was only 10 degrees, Hall's lateral bending and rotation was normal. Dr. Roy found Hall's range of motion in her knees and

ankles to be normal; yet, he noted a grinding in her left knee and opined Hall had osteoarthritis in her left knee which presented problems with her bending and squatting and could affect her balance. He concluded his report by opining, "I think I would consider her disabled secondary to back problems. She needs to lose weight." No specific restrictions on physical activity were noted (R. 210-212).

R. Dale Bernauer, M.D. performed a disability examination on or about October 17, 2005. In his report, Dr. Bernauer states Hall had a full range of motion in her knees and ankles. However, her neck flexion, extension and right and left turn were 30 degrees and her right and left flexion were only 10 degrees. Additionally, he noted Hall's back flexion was 30 degrees, extension and right and left flexion were 10 degrees and her spine narrowed at L4-L5 and L5-S1. Dr. Bernauer concluded by opining that Hall had degenerative disc disease to her lumbar and cervical spine. Therefore she should not lift more than 10 to 20 pounds and should not stoop, crawl or climb on a repetitive basis (R. 240-241).

The ALJ carefully considered the entire record and found Hall had not engaged in substantial gainful activity in the last 15 years. The medical evidence established that she suffered from the following severe impairments: degenerative disc disease of the cervical spine, osteoarthritis of the left knee and obesity. However, none of these impairments, alone or in combination, met or

5

equaled a listing in Appendix 1, Subpart P, Regulation No. 4 ("the Listings").

The ALJ found Hall to lack credibility as a witness for the same reasons he discounted the medical opinions of Drs. Heitkamp, Roy and Bernauer; the clinical findings did not support Hall's complaints of pain nor the doctors opinions of marked limitations on functioning and disability (R. 19-21). Accordingly, he found that based on substantial evidence in the record, from February 24, 1999 to October 2005, Hall had the residual functional capacity to perform a full range of light work. He further found that none of her severe impairments, either singularly or in combination, prevented Hall from satisfying the demands of a full range of light work (R. 20).

The ALJ then considered Hall's age, education, work history and RFC as well as medical-vocational rule 202.01 in Appendix 2, Subpart P, Social Security Regulations No. 4 ("the Grids") and determined that until December 23, 2003, a significant number of jobs existed in the national economy that Hall could perform. However, when Hall turned 55 on December 23, 2003 and reached "advanced age", a review of rule 202.01 of the Grids indicated that there were not a significant number of jobs she could perform and she was disabled (R. 21-22).

## Standard of Review

In considering Social Security appeals such as the one

presently before the Court, the Court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether the decision comports with relevant legal standards. McQueen v. Apfel, 168 F.3d 152, 157 (5th Cir. 1999). For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance. Falco v. Shalala, 27 F.3d 160, 162 (5th Cir. 1994), citing Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 482 (1971). Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision but must include a scrutiny of the record as a whole.

A court reviewing the Commissioner's decision may not retry factual issues, re-weigh evidence, or substitute its judgment for that of the fact-finder. Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987); Dellolio v. Heckler, 705 F.2d 123, 125 (5th Cir. 1983). The resolution of conflicting evidence and credibility choices are for the Commissioner and the ALJ, rather than the court. Allen v. Schweiker, 642 F.2d 799, 801 (5th Cir. 1981). Also, Anthony v. Sullivan, 954 F.2d 289, 295 (5th Cir. 1992). The court does have authority, however, to set aside factual findings which are not supported by substantial evidence and to correct errors of law. Dellolio, 705 F.2d at 125. But, to make a finding that substantial

evidence does not exist, a court must conclude there is a "conspicuous absence of credible choices" or "no contrary medical evidence."  Johnson v. Bowen, 864 F.2d 340 (5th Cir. 1988); Dellolio, 705 F.2d at 125.

## Issues

Hall raises the following issues for judicial review on appeal:

> 1. The Commissioner erred in failing/refusing to follow the dictates of Social Security Ruling 83-20; and
>
> 2. The Commissioner improperly applied the Grids.

### Social Security Ruling 83-20

Hall argues that the Commissioner erred by failing or refusing to follow the dictates set forth in Social Security Ruling 83-20 ("SSR 83-20").  Specifically, she contends that the ALJ should not have determined her onset date to be December 23, 2003, the date of her 55th birthday.  Rather, he should have considered her impairments, degenerative disk disease and osteoarthritis, to be slowly progressive impairments, and, thus, he should have called a medical advisor to help him determine at what date these impairments reached a disabling level.

ALJ Meyer specifically stated that Hall's impairments were severe impairments, but they did not meet or equal any of the Listings at any time before or after December 23, 2003.  The determination that Hall was not disabled from February 24, 1999 to December 23, 2003 is supported by substantial evidence and Hall

8

fails to present any argument or proof to the contrary. Without a finding of disability prior to December 23, 2003, there is no need to determine an earlier onset date nor is there a need to rely upon SSR 83-20.

As ALJ Meyer's determinations that Hall is presumptively disabled pursuant to rule 202.01 and that her onset date is December 23, 2003 are supported by substantial evidence, Hall's contention that the ALJ should have called a medical advisor is without merit.

<u>Reliance upon the Grids</u>

Hall also contends the ALJ should have called a vocational expert, rather than relying upon the Grids in denying her claim for disability prior to December 23, 2003. In support, Hall contends the ALJ found her nonexertional impairments, in combination with her exertional impairment, constitute a "severe" impairment and a vocational expert should have been called.

The use of the Grids is appropriate when either (1) the claimant suffers from exertional impairments only, or (2) when the nonexertional impairments do not significantly affect the claimant's residual functional capacity. <u>Newton v. Apfel</u>, 209 F.3d 448, 458 (5th Cir. 2000), citing <u>Fraga v. Bowen</u>, 810 F.2d 1296, 1304 (5th Cir. 1987). ALJ Meyer specifically states that he considered the radiographic evidence and clinical findings regarding her impairments, degenerative disc disease, osteoarthritis of the knee

9

and obesity; however, none of the impairments - on their own or in combination - significantly affected Hall's residual functional capacity (R. 20).

The ALJ notes that he considered the severe impairments, on their own and in combination; however, they did not affect her ability to perform a full range of light work. Additionally, he details why he finds the x-rays taken in 2000 of Hall's left knee and back as well as the opinions of the consulting physicians do not support a finding that her impairments significantly affect her RFC. The ALJ explains why he finds neither Dr. Heitkamp's opinion nor that of Dr. Roy to be supported by their own clinical findings. Additionally, he notes that while Dr. Bernauer's disability examination notes reduction in Hall's range of motion in both her spine and knee, his opinion of Hall's functional capacity was still not supported by the medical evidence. Even if it was, he notes that Dr. Bernauer's opinion was rendered in October 2005 and added no value to a determination of functional capacity from 1999 to the time it was rendered.

Accordingly, the determination that Hall's severe impairment, alone or in combination, did not substantially affect her RFC is proper. Therefore, the ALJ properly relied upon the Grids and correctly determined that a significant number of jobs existed in the national economy which Hall could perform between February 24, 1999 and December 23, 2003. Accordingly, Hall's argument that

reliance upon the Grids was reversible error is without merit.

## Conclusion

After review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. §405(g), I find there is substantial evidence in the record as a whole to support the Commissioner's decision and that the Commissioner's decision comports with all relevant legal standards. Anthony v. Sullivan, 954 F.2d 289, 292 (5th Cir. 1992).

Accordingly, IT IS RECOMMENDED that Hall's appeal be DENIED AND DISMISSED WITH PREJUDICE.

## Objections

Under the provisions of 28 U.S.C. §636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond too another party's objections within **ten (10) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM**

**ATTACKING AN APPEAL ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 30th day of July, 2008.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE